UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Pete E. Dutton,

|                    |                                        |
| ------------------ | -------------------------------------- |
| Plaintiff,         | Court File No. 16-cv-668 (WMW/LIB)     |
| v.                 | **REPORT AND RECOMMENDATION**          |
| St. Louis County, et al., |                                 |
| Defendants.        |                                        |

This matter came before the undersigned United States Magistrate Judge pursuant to an Order of Referral, [Docket No. 71], and upon Defendant Nurse Elizabeth Martinson's Motion for Summary Judgment, [Docket No. 54].[1] The Undersigned held a hearing on the Motion on May 29, 2018, after which the Motion was taken under advisement. (Minute Entry, [Docket No. 87]).

For the reasons set forth below, the Undersigned recommends that Defendant Martinson's Motion for Summary Judgment, [Docket No. 54], be **granted,** that summary judgment be entered in Defendant Martinson's favor as to Count 1, and that Counts 3 and 4 be **dismissed with prejudice** for failure to comply with Minn. Stat. § 145.682, subd. 2.

---

[1] The remaining Defendants—St. Louis County, Correctional Officer Matthew Wallis, Correctional Officer Michael Marshall, Correctional Officer Robert Pennington, and Correctional Officer Glen Peterson ("the County Defendants")—filed a joint Motion for Summary Judgment, which also was scheduled to be heard at the May 29, 2018, Motion Hearing. However, prior to the May 29, 2018, Motion Hearing, the County Defendants advised the Court that they had settled with Plaintiff, and they did not intend to argue the Motion at the scheduled Motion Hearing. [Docket No. 84]. On June 22, 2018, Plaintiff and the County Defendants filed a Stipulation of Dismissal. [Docket No. 92]. On June 25, 2018, the Court issued an Order dismissing with prejudice Plaintiff's claims against the County Defendants. [Docket No. 94]. Thus, the only Motion remaining for Report and Recommendation is Defendant Martinson's Motion for Summary Judgment, [Docket No. 54]

## I.      BACKGROUND  AND STATEMENT OF FACTS[2]

At approximately 9:10 p.m. on March 19, 2012, while incarcerated at the St. Louis County Jail, Plaintiff Pete E. Dutton informed jail staff that he was experiencing severe abdominal pain the likes of which he had never experienced before, he had not had a bowel movement in several days, and he had been vomiting. (Gross Dec., Exh. D, [Docket No. 62]; Exh. F, [Docket No. 63], 2; Leyderman Dec., Exh. 2, [Docket No. 79-1], 40). Plaintiff asked to go to a hospital for treatment. (Gross Dec., Exh. F, [Docket No. 63], 2). Plaintiff was not transported to a hospital; rather, jail staff gave him ibuprofen and an antacid medication, and they told Plaintiff to drink water. (Id. at 2-3; Leyderman Dec., Exh. 2, [Docket No. 79-1], 40). Throughout the night of March 19, 2012, jail staff checked on Plaintiff several times. (Gross Dec., Exh. F, [Docket No. 63], 2-3; Leyderman Dec., Exh. 2, [Docket No. 79-1], 40).

The following morning, at approximately 8:30 a.m., Plaintiff saw Defendant Nurse Elizabeth Martinson. (Gross Dec., Exh. F, [Docket No. 63], 12). Defendant Martinson spoke with Plaintiff and took his pulse, blood pressure, and temperature. (Gross Dec., Exh. G, [Docket No. 64], 7).

Plaintiff testified at a later deposition that he told Defendant Martinson that he had been experiencing heavy sweating and severe abdominal pain continuously throughout the night, even when he was not moving. (Gross Dec., Exh. F, [Docket No. 63], 3). Plaintiff further testified that he was sweating heavily during his examination by Defendant Martinson, that he shook "head to toes" during the appointment, and that he informed Defendant Martinson he had not had a bowel movement in several days. (Id. at 11, 25, 37). For her part, Defendant Martinson testified at a later

---

[2] The record now before the Court contains many additional facts related to the actions of jail staff prior to Plaintiff seeing Defendant Martinson and after that examination. However, although the undersigned reviewed the record now before the Court in its entirety, many of those facts are not related here except as needed for context, because Defendant Martinson is the only Defendant with a Motion for Summary Judgment now pending before the Court.

deposition that she has no recollection of seeing Plaintiff, but she did not contest the accuracy of her

notes in the available records. (Gross Dec., Exh. G, [Docket No. 64], 3, 9-10). Those notes state:

> [Plaintiff] was seen this am [*sic*] for complaints of nausea , [*sic*] dry heaves. He also reports that he has had severe mid-abdominal pain intermittently through the night. He says his pain is severe with any movement. Skin is warm and dry at this time, however he reports that he has had sweats during the night. He denies ever having anything like this in the past. His abdomen is not tender to palpation at this time. Temp, 98.6, pulse 90, BP 122/84. Hypoactive bowel sounds. Reports constipation, had a regular BM a few days ago. He appears to be mildly distresses [*sic*] at this time. Paged Dr. Jones to update him[.]

(Leyderman Dec., Exh. 2, [Docket No. 79-1], 40).

In any event, it is uncontested that Plaintiff again expressed his wish to go to the hospital,

this time to Defendant Martinson. (Gross Dec., Exh. F, [Docket No. 63], 4, 12). Defendant

Martinson told Plaintiff that the decision as to whether he went to a hospital was not up to her, and

that she needed to speak to a doctor. (Id. at 12, 25). After being examined by Defendant Martinson,

Plaintiff was taken back to a cell. (Id. at 14).

At approximately 9:40 a.m., Defendant Martinson spoke by telephone with Dr. Gary Jones,

the medical doctor contracted to provide services for the St. Louis County Jail at the time, and she

informed him of Plaintiff's condition.[3] (Gross Dec., Exh. G, [Docket No. 64], 8-9). Plaintiff's

medical chart reflects that Dr. Jones ordered that Plaintiff should "go to the ER to be checked. He

may go by car when staffing is available." (Gross Dec., Exh. F, [Docket No. 63], 4; Exh. G, [Docket

No. 64], 9; Exh. H, [Docket No. 65], 2, 6). Dr. Jones later testified that he had the authority to order

immediate transportation of an inmate to the hospital and that if he had intended to order such

immediate transportation for Plaintiff, he would have specifically said so. (Id. at 7). Moreover, Dr.

Jones later testified that "[e]ven looking back at the reports," he "would still recommend instead of

---

[3] Plaintiff implies that staff at the St. Louis County Jail informed Defendant Martinson that Plaintiff had been vomiting dark matter and bleeding from his nose. (Mem. in Opp., [Docket No. 78], 6). However, the record before the Court reflects that the officer who recorded the nosebleed and dark vomit testified at a December 13, 2017, deposition that the nurse he reported those observations to was named Janice Jones, not Defendant Martinson. (Gross Dec., Exh. I, [Docket No. 66], 1-2, 5). Other than Plaintiff's mere speculations, there is no evidence in the record that Defendant Martinson knew of these events during the relevant timeframe.

taking [an ambulance] out of the picture, . . . if they have the staff there, they can get him in the car. . . . I don't think it's unreasonable to take him down by a staff car." (Id. at 7). Defendant Martinson filled out a transport request[4] and gave it to the jail shift commander to indicate Plaintiff should be transported out of the jail for medical treatment when staffing was available to do so. (Gross Dec., Exh. D, [Docket No. 61], 7; Exh. G, [Docket No. 64], 9).

At approximately 12:00 p.m. on March 20, 2012, Plaintiff was transported to the hospital by car. (Gross Dec., Exh. D, [Docket No. 61], 2; Exh. F, [Docket No. 63], 4). He arrived at the emergency department at approximately 12:09 p.m. and, after initial testing, Plaintiff was admitted to the hospital at approximately 3:00 p.m. for surgery. (Id. at 14). At approximately 3:22 p.m., Plaintiff underwent surgery to repair a perforated prepyloric gastric ulcer. (Id. at 15; Leyderman Dec., Exh. 7, [Docket No. 79-1], 70).

On March 15, 2016, Plaintiff initiated the present case by filing a Complaint. [Docket No. 1]. He initially brought multiple claims against Defendant Martinson and other Defendants; Plaintiff's claims against the Defendants other than Defendant Martinson were dismissed with prejudice on June 25, 2018, pursuant to a Stipulation by the involved parties. (See, [Dockets No. 92 and 94]). The only remaining claim at the present time are Plaintiff's claims against Defendant Martinson for (1) violation of Plaintiff's Fourteenth Amendment substantive due process rights based upon alleged deliberate indifference to Plaintiff's medical needs, (2) medical malpractice due to her failure to immediately transport or have Plaintiff transported to an emergency room for treatment upon examining him; and (3) negligence, also based upon the delay in transporting Plaintiff to an emergency room for treatment. (Compl., [Docket No. 1], at 8-9). Plaintiff seeks declaratory judgment, compensatory damages, punitive damages, and attorney's fees and costs. (Id. at 9).

---

[4] The transport form does not indicate the time at which Nurse Martinson filled it out or the time at which it was submitted to the jail's shift commander. (Gross Dec., Exh. D, [Docket No. 61], 7).

On March 1, 2018, Defendant Martinson filed her Motion for Summary Judgment. [Docket No. 54]. In support, she contends that she is entitled to summary judgment on Plaintiff's medical malpractice and negligence claims because Plaintiff failed to comply with the expert affidavit requirements of Minn. Stat. § 145.682. (Mem. in Supp., [Docket No. 56], 14-19). With respect to Plaintiff's claim of deliberate indifference in violation of the Fourteenth Amendment, Defendant Martinson argues that Plaintiff has not established the requisite prima facie case thereof. (Id. at 20-25).

On March 5, 2018, Judge Wright referred Defendant Martinson's Motion for Summary Judgment to the Undersigned for Report and Recommendation. [Docket No. 71].

On April 12, 2018, Plaintiff filed a Memorandum in Opposition to Defendant Martinson's Motion for Summary Judgment. [Docket No. 78]. Therein, he argues that he has presented sufficient evidence to support his claim against Defendant Martinson of deliberate indifference in violation of the Fourteenth Amendment by failing to "promptly" have him transported to an emergency room upon seeing him. (Id. at 13-14, 18-19). Plaintiff also argues that Defendant Martinson violated his Fourteenth Amendment rights by remaining deliberately indifferent to his severe pain and failing to provide treatment to ease that pain. (Id. at 14-19). Plaintiff further contends that genuine issues of material fact remain in dispute with respect to his deliberate indifference claim and, therefore, summary judgment is precluded. (Id. at 19-24). With respect to Defendant Martinson's arguments regarding the expert affidavits required by Minnesota state law for Plaintiff's Minnesota state-law negligence and medical malpractice claims, Plaintiff contends that such affidavits are unnecessary because the instant case involves the type of medical malpractice and negligence the recognition of which does not require medical or technical knowledge or expertise. (Id. at 24-25).

5

On May 3, 2018, Defendant Martinson filed her Reply to Plaintiff's Response. [Docket No. 85]. In her Reply, Defendant Martinson reasserts her arguments in support of the Court granting summary judgment in her favor on all counts by challenging Plaintiff's contentions that expert affidavits are unnecessary to support his Minnesota state-law claims of medical malpractice and negligence, that there are no issues of disputed material fact remaining, and that Plaintiff has not articulated a supportable claim against her for a violation of his rights under the Fourteenth Amendment. (Id.).

The Undersigned held a Hearing on the Motion on May 29, 2018, after which Defendant Martinson's Motion for Summary Judgment was taken under advisement. [Docket No. 87].

## II.     DEFENDANT MARTINSON'S MOTION FOR SUMMARY JUDGMENT, [DOCKET NO. 54]

### A.  Standards of Review

> Summary judgment should be granted if the evidence, viewed in the light most favorable to the nonmoving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. A party opposing summary judgment may not rest upon mere allegations or denials contained in the pleadings, but must, by sworn affidavits and other evidence, set forth specific facts showing that there is a genuine issue for trial.

(Citations omitted.) Mehrkens v. Blank, 556 F.3d 865, 868-69 (8th Cir. 2009).

> "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party does so, the nonmoving party must "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. However, "[w]here the moving party fails to satisfy its burden to show initially the absence of a genuine issue concerning any material fact, summary judgment must be denied even if no opposing

6

evidentiary matter is presented." Foster v. Johns-Manville Sales Corp., 787 F.2d 390, 393 (8th Cir. 1986).

In addition, a movant is entitled to summary judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Under such circumstances, no genuine issue of fact exists because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 526-27 (8th Cir. 2007).

### B. Analysis

#### 1. Deliberate Indifference (Count 1)[5]

As stated above, Plaintiff bases his claim of deliberate indifference in violation of his rights under the Fourteenth Amendment on two theories:   first, that Defendant Martinson failed to

---

[5] The Undersigned notes that Plaintiff has pled and argued his deliberate indifference claim as being based upon "Plaintiff's constitutional right to substantive due process of law under the Fourteenth Amendment to the United States Constitution . . . ." (Compl., [Docket No. 1], 7). Similarly, in his Memorandum in Opposition to the present Motion, Plaintiff asserts:  "As  a pretrial detainee, [Plaintiff's] right to medical care arises under the Due Process Clause of the Fourteenth Amendment to the United States Constitution." (Mem. in Opp., [Docket No. 78], 10). It is not clear, however, that Plaintiff was in the St. Louis County Jail at the time in question as a pretrial detainee. (See, Gross Dec., Exh. F, [Docket No. 63], 19). The record indicates otherwise, and at the May 29, 2018, Motion Hearing, counsel for Plaintiff conceded that he believed the events at issue in this case occurred during a post-conviction incarceration. (May 29, 2018, Motion Hearing, Digital Record 10:25-28). If Plaintiff was not a pretrial detainee at the time of the events in question, he has no claim under the Fourteenth Amendment's substantive Due Process clause, and he has not pled an Eighth Amendment claim; therefore, the Court could recommend dismissal of Count I on this ground alone. See, Bradford v. Purkett, No. 4:05cv00041 FRB, 2007 WL 892415, *3 (E.D. Mo. March 22, 2007) ("[T]he Court notes that a convicted prisoner's claim of failure to provide medical treatment is properly analyzed under the Eighth Amendment, not the Fourteenth Amendment, inasmuch as the Eighth Amendment's prohibition against cruel and unusual punishment applies to convicted persons. For this reason, the Court finds that plaintiff's Fourteenth Amendment claim is not viable, and should be dismissed with prejudice as a matter of law."). However, the standard for deliberate indifference that violates a pretrial detainee's Fourteenth Amendment rights is borrowed from the standard for deliberate indifference that violates a convicted inmate's Eighth Amendment rights, as applicable to states through the Fourteenth Amendment. See, Hall v. Ramsey County, No. 12-cv-1915 (DSD/LIB), 2014 WL 4055368, *4 (D. Minn. Aug. 14, 2014). Because the standard for showing deliberate indifference to medical needs does not change based on Plaintiff's apparent status as a post-conviction inmate at the time in question, the Undersigned proceeds to the merits of the arguments as though they were properly brought under the Eighth Amendment.

promptly transport Plaintiff to an emergency room for treatment, and second, that Defendant Martinson failed to treat or otherwise attempt to lessen Plaintiff's pain while he waited for transport. (Mem. in Opp., [Docket No. 78], 13-19).

"[T]he Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the States through the Fourteenth Amendment's Due Process Clause, requires the State to provide adequate medical care to incarcerated prisoners" because "the prisoner is unable "'by reason of the deprivation of his liberty [to] care for himself."'" See, DeShaney v. Winnebago Cty. Dept. of Soc. Servs., 489 U.S. 189, 198 (1989); see, also, Senty-Haugen v. Goodno, 462 F.3d 876, 889 (8th Cir. 2006) (noting that prisoners may assert claims under "the Eighth Amendment prohibition on cruel and unusual punishment arising from inadequate medical attention").

Proving such deliberate indifference requires a plaintiff to prove both a subjective component and an objective component. Stai v. Deshane, 183 F. Supp. 3d 937, 943 (D. Minn. 2016).

> The objective component requires a plaintiff to demonstrate he suffered from an objectively serious need. The subjective component requires a plaintiff to show that the defendant actually knew of, but disregarded, that need. This means the prisoner must show "more than negligence, more even than gross negligence." This is because deliberate indifference is "akin to criminal recklessness, which demands more than negligent misconduct."

Id. (citations omitted).

> "The failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." "The Eighth Amendment, while requiring medical treatment, does not require that the precise treatment be provided, nor does it require treatment at the time of the patient's choosing. Rather, it merely requires an absence of deliberate disregard."

Stevens v. Roy, No. 16-cv-3807 (JRT/LIB), 2017 WL 8944013, *15 (D. Minn. June 8, 2017), report and recommendation adopted at 2017 WL 4156999 (D. Minn. Sept. 19, 2017). Moreover, in order

to show an Eighth Amendment violation arising from deliberate indifference to an inmate's medical needs, the inmate must prove that the defendant's "unconstitutional actions in fact caused his injuries." See, Gibson v. Weber, 433 F.3d 642, 646 (8th Cir. 2006).

In the case presently before the Court, Plaintiff has failed to adequately establish material facts that Defendant Martinson's actions, even if unconstitutionally deliberate indifference, caused him injury that would suffice to support an Eighth Amendment claim.

Plaintiff contends that he has "submitted verifying medical evidence showing that the delay in the transport and subsequent treatment of his medical condition caused a detrimental effect on [Plaintiff's] general condition and resulted in a delayed recovery." (Mem. in Opp., [Docket No. 78], 23). However, the only specific evidence of record to which Plaintiff points is an Office Note from an April 3, 2012, "follow-up visit" with Dr. Alexander L. Colonna, M.D., in which Dr. Colonna noted that Plaintiff "had a prolonged ileus postoperatively due to his having gastric contents in his abdomen for several days before presenting to the emergency room."[6] (Id. at 22-23; Leyderman Dec., Exh. 7, [Docket No. 79-1], 77). Plaintiff argues that this creates, at the very least, a dispute of material fact over whether Defendant Martinson "played a significant role in the delay of treatment" that caused his postoperative prolonged ileus. (Mem. in Opp., [Docket No. 78], 22-23).

This argument is unavailing because, as Plaintiff concedes, Defendant Martinson was responsible, at the very most, for only the delay between 8:30 a.m. on March 20, 2012, when Defendant Martinson first saw Plaintiff, to approximately 12:09 p.m. that same day, when Plaintiff arrived at the emergency room for treatment.[7] (May 29, 2018, Motion Hearing, Digital Record, 10:52-53; see, also, Gross Dec., Exh. F, [Docket No. 63], 12, 14). Dr. Colonna's single recorded

---

[6] "Ileus" is defined as "intestinal obstruction that is due to a nonmechanical cause, such as paralysis and failure of peristalsis." Dorland's Illustrated Medical Dictionary, 32nd Ed., p. 914 (2012).

[7] Plaintiff's argument at the May 29, 2018, Motion Hearing as to injuries he could have suffered if he had been kept at the jail all day long are inappropriate speculation because those are not the facts presently before the Court. Thus, that argument is not addressed further.

statement in his April 3, 2012, Office Note opines that Plaintiff's post-operative ileus was caused by "having gastric contents in his abdomen for <u>several days</u>." (<u>See</u>, Leyderman Dec., Exh. 7, [Docket No. 79-1], 77 (emphasis added)). As Plaintiff also conceded at the May 29, 2018, Motion Hearing, there is simply no evidence in the record now before the Court that definitively states that the 3- to 4-hour delay Plaintiff now attributes to the actions of Defendant Martinson caused or even contributed to Plaintiff's postoperative problems. (<u>See</u>, May 29, 2018, Motion Hearing, Digital Record, 10:48-51).

For her part, Defendant Martinson has submitted admissible evidence in support of her Motion for Summary Judgment in the form of the Expert Disclosure of Dr. John Shearen M.D. (Gross Dec., Exh. N, [Docket No. 67], 13). Dr. Shearen will testify, if needed at trial, that the delay in transporting Plaintiff to the emergency room did not cause any injury to Plaintiff.[8] (<u>Id</u>.). Plaintiff relies only upon the Office Note by Dr. Colonna which on its face does not assert that any injury to Plaintiff occurred because of the 3- to 4-hour time lapse between Defendant Martinson's examination of Plaintiff and his arrival at the emergency room.

In his Response to Defendant Martinson's present Motion for Summary Judgment, Plaintiff argues for the first time that the pain he suffered during the 3- to 4-hour delay in treatment on March 20, 2012, is an independently sufficient injury to support his current claim for deliberate indifference. (Mem. in Opp., [Docket No. 78], 14-17). This argument is similarly unpersuasive. Plaintiff is correct that the Eighth Circuit has recognized that a failure to address severe pain may be sufficient to state an Eighth Amendment claim for deliberate indifference to medical needs. (<u>See</u>, Mem. in Opp., [Docket No. 78], 14-17). However, all of the cases to which Plaintiff cites for

---

[8] Plaintiff has not submitted to the Court any similar expert affidavits or testimony to dispute this assertion and, as of the May 29, 2018, Motion Hearing, Plaintiff had not identified any such experts, despite the deadline for Plaintiff's expert disclosures having passed nearly a year earlier, on June 1, 2017. (<u>See</u>, Pretrial Scheduling Order, [Docket No. 39], 4). Moreover, as Plaintiff acknowledged at the May 29, 2018, Motion Hearing, because Dr. Colonna was not timely disclosed as an expert witness, Dr. Colonna could not testify at trial that the delay attributed to Defendant Martinson caused the injuries to Plaintiff. (May 29, 2018, Motion Hearing, Digital Record, 10:53-56).

support of this argument are clearly and materially distinguishable from the present case. For example, <u>Robinson v. Moreland</u>, 655 F.2d 887, 889 (8th Cir. 1981), involved an inmate who first complained about his injured hand, which was swollen and which he believed to be broken, "[s]hortly after midnight]" on a Saturday morning. Instead of complying with jail regulations and sending the inmate to the hospital or requesting advice from a nurse at the hospital, the officer ordered an ice pack for the inmate. <u>Id.</u> at 889-90. The inmate did not receive any treatment other than ice for his injured hand until the following Monday morning. <u>Id.</u>at 890. At that time, the inmate saw a nurse at the jail, then a visiting physician, and was ultimately transported to the hospital where he required surgery to repair a fracture in his hand. <u>Id.</u> On appeal, the Eighth Circuit affirmed a jury's award of $1,000.00 in actual damages, agreeing with the district court that "'the jury could infer that plaintiff suffered pain from December 2 to 4.'" <u>Id.</u>

Similarly, <u>Ellis v. Butler</u>, 890 F.2d 1001, 1003-04 (8th Cir. 1989), involved an inmate whose treatment for reported pain in his knee was delayed from a Saturday to a Monday and who alleged that he had been seeking treatment for back, knee, and sinus problems for the prior 2 weeks without success. The Eighth Circuit held that the district court had erred in its Rule 12 dismissal of the inmate's subsequent claims for failure to state a claim upon which relief can be granted, noting that although the claims might fail at a later stage of the proceedings, the inmate had pled sufficient facts, when taken as true, to raise a plausible claim of deliberate indifference. <u>Id.</u>

<u>Crooks v. Nix</u>, 872 F.2d 800, 801-03 (8th Cir. 1989), involved an inmate with chronic granulocytic leukemia who asserted that he was not provided with adequate and proper pain medication. Although the period of time of this alleged deprivation is not discussed in detail by the Eighth Circuit, the Eighth Circuit referred to a physician's notes concerning pain and medication from January 1985, February 1985, and March 1985. <u>Id.</u> at 803. Ultimately, the Court held that summary judgment had been improperly granted in the defendants' favor on this claim, but not

11

because the Eighth Circuit held that the plaintiff had shown he was entitled to summary judgment. Id. at 803-05. Rather, the Eighth Circuit reversed because the doctrine of respondeat superior—the basis for the district court's award of summary judgment to defendants—did not necessarily shield the defendant prison officials from liability for the actions of contracted medical providers. Id.

Langford v. Norris, 614 F.3d 445 (8th Cir. 2010), involved an even longer period of untreated pain. Of the two inmate plaintiffs in Langford, one inmate had "complained for years of stomach and back pain" without adequate treatment, and the other inmate alleged that a lapse in treatment following surgery for a broken ankle resulted in or exacerbated the effects of a severely painful postoperative condition that resulted in, among other things, an inability to bear weight on that ankle, necessitating the use of a wheelchair at all times. Id. at 450-52, 460-61.

With respect to the present case, there is a distinct material difference between the approximately 2-day delay in treatment found in Robinson and Ellis and the 3- to 4-hour delay alleged here. The difference is even more pronounced in Crooks and Langford, during which the alleged delays there lasted months.

Plaintiff argued at the May 29, 2018, Motion Hearing that the Eighth Circuit held in Dadd v. Anoka County, 827 F.3d 749 (2016), that there is no minimum duration of pain required before that pain may sustain an Eighth Amendment violation by deliberate indifference to the serious medical needs of an inmate. (See, May 29, 2018, Motion Hearing, Digital Record, 10:30-42). However, a thorough reading of Dadd reveals that it, too, is materially distinguishable from the circumstances underlying the case presently before the Court.

In Dadd, the inmate was prescribed medication by a dentist prior to his arrest, but he was denied that pain medication by jail staff from the time of his arrest on March 29, 2014, through his release from jail at approximately 5:30 p.m. on March 31, 2014. Id., 827 F.3d at 753-54. Importantly, the Eighth Circuit noted that the inmate in Dadd had a preexisting prescription that jail

staff denied him, that his right to adequate treatment was well-established, that violation of such a right by denying medication that has been prescribed may lead to constitutional liability, and that the district court had properly denied the defendants qualified immunity. Id. at 757. Dadd does not, as Plaintiff now argues, stand for the proposition that an inmate in pain for any length of time may sustain an Eighth Amendment claim of deliberate indifference to his or her medical needs based solely upon that pain. Moreover, unlike the inmate in Dadd, Plaintiff in the present case was not denied medication that he was properly prescribed by a doctor.

Although the undersigned does not discount Plaintiff's reports that the pain he experienced while awaiting the couple of hours before transport to the hospital was the most severe pain he had felt in his lifetime, Plaintiff has not produced either evidence or persuasive analogous case law to support his claim that the mere 3- to 4-hour time period between his examination by Defendant Martinson and Plaintiff's arrival at the hospital resulted in an extension of his pain that independently supports an Eighth Amendment claim for deliberate indifference, without evidence of an additional injury. The undersigned does not imply that an Eighth Amendment claim of deliberate indifference to an inmate's medical needs cannot ever arise from a short period of intense pain. However, under the facts of this case and in light of the evidence of record before the Court, Plaintiff has not established that the pain he suffered during the 3- to 4-hour period he was in the care of Defendant Martinson is sufficient injury to independently sustain his claim of deliberate indifference.[9]

---

[9] In addition, the undersigned further notes that although Plaintiff asserts that Defendant Martinson should have offered him treatment for his pain during the time waiting for transport, there is no evidence in the record now before the Court that establishes that Defendant Martinson could have prescribed pain medication to Plaintiff. Moreover, to the extent that Plaintiff argued at the May 29, 2018, Motion Hearing that Defendant Martinson was deliberately indifferent by failing to offer him over-the-counter medications for pain relief, Plaintiff testified at his November 2, 2017, deposition that the over-the-counter pain medication he received the night before he saw Defendant Martinson "didn't do any good." (May 29, 2018, Motion Hearing, Digital Record, 10:59-11:01; Gross Dec., Exh. F, [Docket No. 63], 10). Therefore, to the extent that Plaintiff is arguing that Defendant Martinson's failure to provide him with over-the-counter medication increased or prolonged his pain and discomfort during his wait for transport to the emergency room, there is no evidence in the record to support that argument.

For all the reasons stated above, Plaintiff has failed to establish the existence of an injury caused by Defendant Martinson's allegedly unconstitutional actions, which is an element essential to Plaintiff's claim that Defendant Martinson violated his constitutional right to medical treatment through her deliberate indifference. At best, Plaintiff has made "[m]ere allegations, unsupported by specific facts or evidence beyond [his] own conclusions, [which] are insufficient to withstand a motion for summary judgment." See, Thomas, 483 F.3d at 526-27. Accordingly, with respect to Count 1, Plaintiff's claim of deliberate indifference, on the foregoing basis alone the undersigned could recommend that Defendant Martinson's Motion for Summary Judgment, [Docket No. 54], be granted.

However, the undersigned notes that Plaintiff has also failed to establish the existence of an additional essential element of this claim:  that Defendant Martinson subjectively disregarded Plaintiff's serious medical needs. As stated above, to prove deliberate indifference by Defendant Martinson, Plaintiff must show (1) that he suffered from an objectively serious need, and (2) that Defendant Martinson "actually knew of, but disregarded, that need." See, Stai, 183 F. Supp. 3d at 943.

Defendant Martinson candidly states that she "does not dispute that a perforated gastric ulcer is itself a 'serious medical need' requiring treatment."[10] (Mem. in Supp., [Docket No. 56], 22 n.3).

---

[10] Defendant Martinson also argues, however, that Plaintiff has failed to make a prima facie case that he suffered an objectively serious need because "he has not submitted any verifying medical evidence showing that the delay in transport to the hospital posed a substantial risk of serious harm." (Mem. in Supp., [Docket No. 56], 22). Yet, the cases Defendant Martinson cites as supporting this argument in fact do not do so. First, although Jackson v. Riebold, 815 F.3d 1114, 1119-20 (8th Cir. 2016) discusses the need for "'verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment,'" such evidence goes toward the subjective component of a claim of deliberate indifference, not whether the medical need was objectively a serious one. See, 815 F.3d at 1120 (reiterating a prior case in which the Eighth Circuit held that the district court had not erred in finding a "serious medical need" existed, but reversed the district court on the subjective component, holding that the inmate had "'presented sufficient "verifying medical evidence" that [the prison nurse] "ignored a critical or escalating situation or that the delay posed a substantial risk of serious harm"'"). See, also, Corwin v. City of Independence, Mo., 829 F.3d 695, 698-99 (8th Cir. 2016) (noting lack of medical evidence in the record and affirming grant of summary judgment but not specifying that the lack of medical evidence undermined the question of whether the inmate suffered a serious medical need); Croft v. Hampton, 286 Fed. Appx. 955, 956-57 (8th Cir. 2008) (noting that verifying medical evidence created "genuine issues of material fact as to whether [the inmate] was placed at substantial risk by the delay"). Moreover, Defendant

14

Moreover, the evidence in the record now before the Court contains undisputed evidence that Plaintiff had an objectively "serious medical need." "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" Jones v. Minn. Dept. of Corrections, 512 F.3d 478, 481 (8th Cir. 2008) (quoting Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)).

In the present case, Plaintiff's medical condition was determined by numerous physicians to require treatment, as evidenced by Dr. Jones' order that Plaintiff should be transported to an emergency room, and the emergency and hospital physicians' determination that surgery was required. Moreover, although the accuracy of Defendant Martinson's notes from her examination of Plaintiff are disputed, those notes reflect that material portions of Plaintiff's complaints—severe pain, nausea, discomfort, vomiting, etc.—demonstrate that Plaintiff had a serious medical need that required treatment.

In addition, however, Plaintiff must demonstrate the second, subjective component of a claim of deliberate indifference; he must establish that Defendant Martinson actually knew of the risk of delaying his transport to the emergency room and deliberately disregarded that risk. "'[A] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions.'" Jones, 512 F.3d at 482 (citations omitted).

---

Martinson's heavy reliance on Beyerbach v. Sears, 49 F.3d 1324 (8th Cir. 1995), which she cited both in her written submissions to the Court and at the May 29, 2018, Motion Hearing, is improper in light of the Eighth Circuit's ruling in 2010:

> [Reliance on the Eighth Circuit's] decision in Beyerbach, which held that a similar argument based on a prisoner's failure to produce "verifying medical evidence" was "within [the Eighth Circuit's] appellate jurisdiction on appeal from denial of a motion for summary judgment based on qualified immunity" . . . is misplaced, because [the Eighth Circuit's] later precedents make clear that 'the Supreme Court's opinion in Johnson v. Jones overturned [the] portion of Beyerbach that held [the Eighth Circuit has] jurisdiction to hear such an argument.

Langford, 614 F.3d at 463.

Defendant Martinson testified at her December 13, 2017, deposition that she did not have the authority to order an inmate transported out of the jail for medical treatment; she needed approval for a transport order. (Gross Dec., Exh. G, [Docket No. 64], 4). Similarly, Defendant Martinson testified that she did not have the authority to make the decision to call 911 to have an inmate transported for medical treatment. (Gross Dec., Exh. G, [Docket No. 64], 5). Plaintiff has submitted no evidence to dispute this testimony, and Defendant Martinson cannot be found to have acted with deliberate indifference where she failed to take action that Plaintiff desired, but which Defendant Martinson had no authority to do. Other courts within this District and within the Eighth Circuit have found the same.

For example, in Allen v. Reid, United States Magistrate Judge Steven E. Rau concluded that where the evidence was uncontroverted that the defendant DOC nursing staff supervisor "did not have 'the authority or the medical expertise to prescribe treatment, order testing, or change medical orders issued by practitioners'" and the defendant DOC director of health services "'cannot dictate an offender's medical care and treatment,'" they could not be found liable for deliberate indifference to medical needs claim under 42 U.S.C. § 1983 based upon medical treatment decisions. Allen v. Reid, No. 15-cv-1905 (WMW/SER), 2017 WL 2963863, *6 (D. Minn. April 20, 2017), Report and Recommendation adopted at 2017 WL 2963375 (D. Minn. July 10, 2017). Thus, Magistrate Judge Steven E. Rau recommended that the Court grant the defendants' motion for summary judgment in their favor on the claim of deliberate indifference to medical needs; his Report and Recommendation was adopted on July 11, 2017. Id.

Likewise, in Rivera v. Kallay, No. 12-cv-1479 (MJD/FLN), 2014 WL 834856, *7 (D. Minn. March 4, 2014), then-Chief United States District Judge Michael J. Davis granted summary judgment on a deliberate indifference claim in favor of defendants whom the plaintiff sought to hold liable "for decisions that they did not have the authority to override." Similarly, in Bryant v. Nurse

16

Denham, 6:15-CV-06085-SOH-BAB, 2017 WL 9477753, *1-4 (W.D. Ark. July 25, 2017), United States Magistrate Judge Barry A. Bryant recommended granting summary judgment in favor of the defendant nurse with the Arkansas Department of Corrections on a claim of deliberate indifference to medical need which was based on the failure to give an inmate an injection that the uncontroverted evidence in the record showed the defendant nurse was not authorized to give.

The uncontroverted evidence in the record now before the Court establishes that Defendant Martinson did not have the authority to hasten Plaintiff's transport to the emergency room once Dr. Jones ordered that he be taken by car instead of ambulance. (See, Gross Dec., Exh. G, [Docket No. 64], 4-5). Plaintiff acknowledged at the May 29, 2018, Motion Hearing, the decision whether to transport Plaintiff by ambulance was not ultimately a decision that was up to Defendant Martinson.[11] (May 29, 2018, Motion Hearing, Digital Record, 10:38-40). Therefore, Plaintiff's deliberate indifference claim against Defendant Martinson cannot survive, and Defendant Martinson is entitled to summary judgment in her favor.

Finally, Plaintiff argues that "[g]enuine issues of material fact remain in dispute as to whether Nurse Martinson deliberately interfered with [Plaintiff's] medical care." (Mem. in Opp., [Docket No. 78], 19). Essentially, Plaintiff contends that discrepancies between Defendant Martinson's medical notes, Plaintiff's recollections, and medical records from Plaintiff's treatment

---

[11] To the extent that Plaintiff argues for the first time in his Memorandum in Opposition to the present Motion for Summary Judgment that Defendant Martinson should have re-contacted Dr. Jones to request immediate transportation or that she should have informed the jail shift commander that Plaintiff needed to be immediately transported to the emergency department, Defendant Martinson testified in the scope of her practice at the jail, she did not give "opinions" as to whether inmates were suffering emergencies that required immediate transport; her duty was to report her observations to Dr. Jones or the shift commander for their decision on whether the inmate should be seen for medical treatment or evaluation outside of the jail. (Gross Dec., Exh. G, [Docket No. 64], 12). There is undisputed evidence in the record now before the Court that had Dr. Jones believed that Plaintiff needed immediate transportation to the hospital for treatment, he would have said so "very specific[ally]." (Gross Dec., Exh. H, [Docket No. 65], 7). Dr. Jones also testified that he assumed that "if there wasn't availability relatively soon by the staff [to transport an inmate who needed to go to the hospital for medical services], . . . we would make other plans of getting him down there. It's not like we would wait hours and hours." (Id.). However, contrary to Plaintiff's assertions, the undisputed evidence in the record now before the Court demonstrates that Dr. Jones gave the order for Plaintiff to be transported to the hospital at approximately 9:40 a.m. and Plaintiff was seen in the emergency department at approximately 12:10 p.m.—within 2 and a half hours of Dr. Jones' transport order being given. Thus, even if Dr. Jones' assumption regarding alternative transportation arrangements were true, Plaintiff did not "wait hours and hours" for his transport to the emergency room.

at the emergency room give rise to the question as to whether Defendant Martinson deliberately inaccurately recorded Plaintiff's symptoms and related those inaccuracies to Dr. Jones to delay Plaintiff's medical care in order to retaliate against Plaintiff because he swore at her during her examination of him. (Id. at 19-21).

"Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas, 483 F.3d at 526-27. There is no evidence in the record, beyond Plaintiff's own conclusions, that any discrepancies in Defendant Martinson's medical notations were deliberate or that they were designed to delay or withhold treatment of Plaintiff's medical needs.

In summary, Plaintiff has failed to provide evidence that Defendant Martinson was deliberately indifferent to Plaintiff's serious medical needs or that he suffered a sufficient injury because of any of her actions. These are essential elements of Plaintiff's 42 U.S.C. § 1983 for deliberate indifference to medical needs claim on which Plaintiff would bear the burden of proof at trial. See, Celotex Corp., 477 U.S. at 322.

Therefore, as previously indicated, for all the reasons above, the Undersigned recommends that Defendant Martinson's Motion for Summary Judgment, [Docket No. 54], be **granted** with respect to Count 1.

### 2.  Medical Malpractice (Count 3) and Negligence (Count 4)

Although Plaintiff asserts both a "medical malpractice" claim and a "negligence" claim against Defendant Martinson, both claims involve allegations of negligence by Defendant Martinson in the performance of her professional duties as a nurse. (Compl., [Docket No. 1], 8-9). Therefore, whether they are referred to as "medical malpractice" claims or "negligence claims," claims such as these, which allege negligence by a medical professional, require compliance with Minn. Stat. § 145.682. See, LaFountaine v. Reishus, No. 13-cv-355 (DSD/JJK), 2014 WL 4248437,

*25 (D. Minn. Aug. 27, 2014) (noting that "the Minnesota Supreme Court has applied [Minn. Stat. § 145.682] without regard to any distinction between the[] terms" "medical negligence" and "medical malpractice") see, also, Haile v. Sutherland, 598 N.W.2d 424, 426-28 (Minn. App. 1999) (applying Minn. Stat. § 145.682 to medical negligence claim and discussing its application to medical malpractice claims).

Minn. Stat. § 145.682 applies to "action[s] alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider which include[] a cause of action as to which expert testimony is necessary to establish a prima facie case." Minn. Stat. § 145.682, subd. 2.

> In pertinent part, Minn. Stat. § 145.682 requires every plaintiff in a Minnesota medical malpractice case against a health care provider . . . to furnish two affidavits in support of his claim. These two affidavits have been described as follows:
>
>> The first affidavit ('expert review affidavit') must be submitted with the complaint [or within 60 days of a demand for such affidavit] and state that before commencing the lawsuit, plaintiff's attorney reviewed the facts of the case with a medical expert who believed that at least one defendant named in the suit deviated from the applicable standard of care and thereby injured the plaintiff. . . .
>>
>> The second affidavit ('expert disclosure affidavit') must be served upon the defendant within 180 days after commencement of [discovery] and identify each expert plaintiff intends to call at trial, disclose the substance of the facts and opinions to which the expert will testify, and provide a summary of the grounds for each opinion.
>
> Bellecourt v. United States, 784 F. Supp. 623, 636 (D. Minn. 1992) (citing Minn. Stat. § 145.682, subds. 2-4). If a medical malpractice complainant fails to meet either one of the two affidavit requirements set forth in § 145.682, the statute provides for "mandatory dismissal." Minn. Stat. § 145.6682, Subd. 6; Stroud v. Hennepin County Medical Center, 556 N.W.2d 552 (Minn. 1996).

Smith v. United States, No. 13-cv-3277 (JRT/LIB), 2015 WL 278252, *8 (D. Minn. Jan. 21, 2015) (some citations omitted).

It is undisputed in the present case that Plaintiff timely served Defendant Martinson with an expert review affidavit (the first required affidavit) under Minn. Stat. § 145.682, Subd. 6(a), after

she made a demand for it. (Mem. in Supp., [Docket No. 56], 18-19; Mem. in Opp., [Docket No. 78], 24-25).

However, Defendant Martinson also argues that Plaintiff has never served her with an expert disclosure affidavit. (Mem. in Supp., [Docket No. 56], 19; Gross Dec., [Docket No. 59], 1). Once again, Plaintiff does not contest this assertion. (See, Mem. in Opp., [Docket No. 56], 18-19). Rather, Plaintiff argues that this case fits the following exception to the requirements of Minn. Stat. § 145.682:

> If expert testimony is not needed [to establish a prima facie case of malpractice], § 145.682 does not apply. "Expert testimony is generally required in medical-malpractice cases because they involve complex scientific or technological issues." "An exception to this rule applies when the alleged negligent acts are within the general knowledge or experience of laypersons." "[O]nly rarely" does this exception apply.

Batista v. United States, No. 16-cv-794 (PJS/DTS), 2017 WL 3190648, *9 (D. Minn. June 9, 2017) (citations omitted).

Plaintiff contends that the present case is one which does not require expert testimony because:

> [Plaintiff] is not claiming that Nurse Martinson improperly performed some medical procedure or administered the wrong medication, allegations which would, in contrast to this case, require technical knowledge and understanding. In short, [Plaintiff] argues that Nurse Martinson did not care about the fact that he was left suffering at the jail for hours after he begged her for help and that she could have taken action to have him transported to the hospital sooner but chose not to bother. A jury can easily understand these concepts and allegations without the need to receive expert medical testimony.

(Mem. in Opp., [Docket No. 78], 25).

Plaintiff cites two cases in support of his argument: Tousignant v. St. Louis County, Minn., 615 N.W.2d 53, 58 (Minn. 2000), and Atwater Creamery Co. v. W. Nat'l Mut. Ins. Co., 366 N.W. 271, 279 (Minn. 1985). (Id.). Neither case lends support to Plaintiff's arguments.

Tousignant involved alleged medical negligence by nursing home staff who had been informed via an interagency referral form that a doctor had ordered the plaintiff, who was recovering from hip surgery, to be restrained at all times. 615 N.W.2d at 59. The nursing home staff did <u>not</u> restrain the plaintiff, and she fell and re-fractured her hip, after which she brought a negligence action against nursing home staff. 615 N.W.2d at 59. The Minnesota Supreme Court found that the plaintiff in Tousignant could make a prima facie case for medical negligence even without expert testimony because "[t]he standard of care applicable to [the defendants'] acts or omissions, the breach of that standard of care, and the chain of causation are all within the general knowledge and experience of laypersons." <u>Id.</u> at 61. That is, a layperson would not require specialized knowledge to appreciate a standard of care requiring nursing home staff to comply with a doctor's directions as stated in a referral form, to appreciate a breach of that standard of care by the failure to restrain a patient who had been ordered restrained, to understand the foreseeability and risk that such a patient would likely fall if left unrestrained, and to understand the injuries that could be caused by such a fall. <u>Id.</u> at 59-61.

The circumstances in Tousignant are easily distinguishable. As the Tousignant court noted, to establish a prima facie case for medical malpractice, a plaintiff must provide evidence which, if unexplained and uncontradicted, "appears to be sufficient to establish the fact." <u>Id.</u> at 59. The elements of medical malpractice are: "1) the standard of care recognized by the medical community as applicable to the particular defendant's conduct; 2) that the defendant departed from that standard; 3) that the defendant's departure from that standard was a direct cause of the patient's injuries; and 4) damages." <u>Id.</u> In Tousignant, the plaintiff presented sufficient evidence, without expert testimony, to prove her prima facie case. In the case presently before the Court, Plaintiff has not. For example, Plaintiff contends that Defendant Martinson should have more immediately arranged his transport to an emergency room. However, whether a 3- to 4-hour delay in treatment

after the symptoms reported to Defendant Martinson violated the standard of care recognized by the medical community is not information within the general knowledge of a layperson. And although a layperson could come to the conclusion that, as Plaintiff asserts, "Nurse Martinson did not care about the fact that he was left suffering at the jail for hours after he begged for help and that she could have taken action to have him transported to the hospital sooner but chose not to bother," this conclusion does not establish a prima facie case for medical malpractice or medical negligence. In fact, allowing this sort of argument to support a negligence claim when the factfinder does not have the specialized knowledge needed to understand the standard of care and whether that standard was breached would lead to "purely speculative" conclusions as to whether negligence occurred.

This danger of "purely speculative" conclusions by a layperson jury in professional negligence cases was expressly acknowledged in the other case Plaintiff cites, Atwater Creamery Co. Therein, the Minnesota Supreme Court addressed whether expert testimony is generally required to establish a standard of care and a departure from that standard of care when the object is the acts or omissions of insurance agents. 366 N.W. 2d at 279. The Minnesota Supreme Court noted that generally, such expert testimony is required for cases involving the negligence of doctors and attorneys "because for a jury to decide negligence otherwise would be purely speculative." Id. Ultimately, the Minnesota Supreme Court determined that, under the circumstances present in Atwater Creamery Co., expert testimony was required to establish the insurance agent's standard of care. Id.

The cases in which parties were not required to comply with Minn. Stat. § 145.682 included egregious and obvious malpractice. "For example, an affidavit is not required in a clear *res ipsa loquitur* situation (i.e. the wrong limb amputation, surgical tools left in surgery site." Tineo v. Fed. Bureau of Prisons, No. 5-cv-724 (ADM/SRN), 2005 WL 1745451, *2 n.2 (D. Minn. July 22, 2005); see, also, Vogel v. Turner, No. 11-cv-446 (PJS/JJG), 2013 WL 358874, *6 (D. Minn. Jan. 8, 2013)

("Exceptional cases include situations in which sponges or metal clips are forgotten inside a surgical patient following surgery."). In other words, "expert testimony is necessary to support all but the most obvious medical malpractice claims." Haile, 598 N.W.2d at 428.

Medical malpractice and medical negligence claims such as the ones in this case, however, which are based on a diagnosis, a delay in treatment following that diagnosis, improper treatment, or the like, generally do not fit within the "rarely used" exception to Minn. Stat. § 145.682's affidavit requirement. See, e.g., Batista, 2017 WL 3190648, at *9 ("expert testimony is necessary to establish [a] prima facie case" based on claims of "delay in treatment, improper evaluation and treatment, and the medical staff's failure to do an MRI"); Vogel, 2013 WL 358874, *6 ("Diagnosis of cancer is not so obvious as to fall within the 'general knowledge' of lay persons."); Phillips v. Fairview Health Servs., No. 10-cv-4442 (MJD/SER), 2011 WL 6151514, *4 (D. Minn. Dec. 12, 2011) ("[A]n expert opinion is required to determine whether the [defendants'] care and treatment of Plaintiff . . . was medically appropriate under the circumstances . . . .").

The case presently before this Court is not one in which the alleged medical malpractice or negligence is so obvious and within the general knowledge of a layperson that expert testimony is unnecessary to establish a prima facie case. Therefore, Plaintiff was subject to the mandated affidavit requirements established in Minn. Stat. § 145.682. He does not dispute that he failed to comply with those requirements, and such failure mandates dismissal of Plaintiff's medical malpractice and negligence claims with prejudice. See, Flores v. U.S., 689 F.3d 894, 900 (8th Cir. 2012) ("[T]he consequence of noncompliance [with Minn. Stat. § 145.682, subd. 2] is dismissal of the claim with prejudice."); Chizmadia v. Smiley's Point Clinic, 873 F.2d 1163, 1164 (8th Cir. 1989) ("Failure to comply with section 145.682 results in mandatory dismissal with prejudice.").

### IV.    CONCLUSION

A. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Martinson's Motion for Summary Judgment, [Docket No. 54], be **GRANTED;**

2. Summary judgment be entered in Defendant Martinson's favor on Count 1 of the Complaint; and

3. Counts 3 and 4 of the Complaint be **DISMISSED with prejudice**, as set forth above.

Dated: July 13, 2018                                        s/Leo I. Brisbois
                                                            The Honorable Leo I. Brisbois
                                                            United States Magistrate Judge

### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).